2002-NMSC-032

55 P.3d 962

Nicholas LISANTI and Geraldine Lisanti, Plaintiffs–Respondents,

v.

ALAMO TITLE INSURANCE OF TEXAS, a member of the Fidelity National Group of Companies, and Fidelity National Title Insurance Company, Defendants-Petitioners.

No. 27,166.

Supreme Court of New Mexico.

Sept. 15, 2002.

Cuddy, Kennedy, Hetherington, Albetta & Ives, L.L.P., Charlotte H. Hetherington, Santa Fe, NM, for Petitioners.

Landry & Ludewig, L.L.P., Stephanie Landry, Albuquerque, NM, for Respondents.

The Simons Firm, L.L.P., Thomas A. Simons, IV, Charles V. Henry, IV, Santa Fe, NM, for Amicus Curiae New Mexico Land Title Association.

Jeffries & Rugge, P.C., Brian A. Thomas, Mikal M. Altomare, Albuquerque, NM, for Amicus Curiae New Mexico Defense Lawyers Association.

Leo V. Boyle, John Vail, Washington, DC, for Amicus Curiae The Association of Trial Lawyers of America.

## OPINION

MINZNER, Justice.

{1} Alamo Title Insurance of Texas ("Alamo") appeals from an opinion of the Court of Appeals reversing an order of the district court staying proceedings on a complaint filed by Nicholas and Geraldine Lisanti ("the Lisantis") pending arbitration. *Lisanti v. Alamo Title Ins. of Tex.*, 2001–NMCA–100, 131 N.M. 334, 35 P.3d 989. The Court of Appeals held that NMSA 1978, § 59A–30–4(A) (1985), which gives the superintendent of insurance the power to promulgate regulations, and a regulation which requires that all title insurance claims under $1,000,000 be resolved through arbitration, violate the Lisantis' right to a trial by jury guaranteed by Article II, § 12 of the New Mexico Constitution. *Lisanti*, 2001–NMCA–100, ¶ 10, 131 N.M. 334, 35 P.3d 989; *see also* N.M. Form 1: Owner's Policy, Public Regulation Commission, Insurance Division, Title Insurance Bureau, 13.14.18.14 NMAC (Apr. 3, 1995). The Court of Appeals also held that the trial court's decision regarding the Lisantis' statutory claims conflicted with NMSA 1978, § 59A–16–30 (1990) and NMSA 1978, § 57–12–10 (1987), which provide for claims brought under the Trade Practices and Frauds section of the Insurance Code and the Unfair Practices Act, respectively, to be judicially resolved. *Lisanti*, 2001–NMCA–100, ¶ 11, 131 N.M. 334, 35 P.3d 989. We affirm.

### I.

{2} Because of the procedural posture of this case, we know few facts concerning the dispute from which this appeal arose. The few facts we do know are undisputed. In November of 1995, the Lisantis purchased property in Torrance County. They also purchased title insurance for the transaction in the amount of $68,818 from Alamo, which has since merged with Defendant Fidelity National Title Insurance Company. *Id.* ¶ 3 n. 1. A dispute arose between Alamo and the Lisantis regarding the coverage of the insurance policy, and Alamo filed a demand for arbitration, pursuant to a clause contained in the policy. The Lisantis filed a complaint in Torrance County District Court, accompanied by a motion for preliminary injunction to prevent arbitration. The complaint alleged breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and statutory claims for unfair insurance practices and unfair trade practices. The trial court denied the motion for preliminary injunction and stayed the Lisantis' claims pending arbitration. On January 20, 2000, the trial court entered an order staying arbitration pending appeal.

{3} On appeal the Court of Appeals concluded that the Lisantis had not consented to arbitration. Relying on *Board of Education v. Harrell*, 118 N.M. 470, 476, 882 P.2d 511, 517 (1994), the Court of Appeals noted that the arbitration clause contained in the insurance policy was required by law. *Lisanti*, 2001–NMCA–100, ¶ 7, 131 N.M. 334, 35 P.3d 989. In *Harrell*, a school superintendent argued that he never agreed at arm's length to mandatory arbitration of his claim that he was unfairly dismissed; that such mandatory arbitration violated his right to a jury trial, his right of access to the courts, and constituted an unconstitutional delegation of judicial authority; and that the manner in which the arbitration was handled violated due pro-

cess. The Court concluded that, because the arbitration was required by statute, Harrell could not be said to have consented to it, but otherwise rejected his claims. The Court of Appeals analysis was based on both statutory and regulatory law.

{4} Section 59A–30–4(A) provides that the superintendent of insurance "shall promulgate such rules and regulations as are necessary to carry out the provisions of the New Mexico Title Insurance Law, including rules and regulations requiring uniform forms of policies...." The Legislature has further provided that "[n]o title insurer or title insurance agent shall use any form of title insurance policy other than the uniform forms promulgated by the superintendent...." NMSA 1978, § 59A–30–5 (1985).

{5} The superintendent of insurance has promulgated a regulation regarding title insurance policies that requires arbitration for all claims under $1,000,000. That regulation reads:

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties.

13.14.18.14 NMAC

{6} In view of this regulation and the statutes under which it was promulgated, the Court of Appeals concluded that the Lisantis did not waive their right to a judicial forum.

*Lisanti*, 2001–NMCA–100, ¶ 7, 131 N.M. 334, 35 P.3d 989. The Court of Appeals described the agreement represented by the title insurance policy as a " 'nonconsensual submission' to state-compelled arbitration." *Id.* (quoting *Harrell*, 118 N.M. at 476, 882 P.2d at 517).

{7} The Court of Appeals also reasoned that the Lisantis' claims were claims for which a jury trial is guaranteed by our state constitution, or statutory claims for which the Insurance Code and the Unfair Practices Act specifically provide a trial in district court. *Lisanti*, 2001–NMCA–100, ¶¶ 10–11, 131 N.M. 334, 35 P.3d 989. The Court of Appeals, after reviewing early New Mexico cases, concluded that "contract actions seeking money damages were routinely tried to juries during the territorial period." *Id.* ¶ 10. The Court of Appeals characterized the Lisantis' common law claims as contractual in nature and noted that they sought money damages. *Id.* The Court of Appeals also held that the regulation requiring mandatory arbitration in title insurance cases conflicts with Section 59A–16–30 and Section 57–12–10, the statutes that respectively form the basis of the Lisantis' unfair insurance and unfair trade practices claims. Section 59A–16–30 specifically grants to plaintiffs injured by an unfair insurance practice "a right to bring an action in district court to recover actual damages." Section 57–12–10(B) allows any person injured by prohibited trade practices to "bring an action to recover actual damages." The Court of Appeals quoted an earlier case noting that " '[a]n agency by regulation cannot overrule a specific statute' " and that the rights created by these statutes prevailed over the regulation on which Alamo relied. *Lisanti*, 2001–NMCA–100, ¶ 11, 131 N.M. 334, 35 P.3d 989 (quoting *Jones v. Employment Serv. Div. of the Human Servs. Dep't.*, 95 N.M. 97, 99, 619 P.2d 542, 544 (1980)).

{8} For these reasons, the Court of Appeals reversed the trial court's order staying further proceedings in district court pending arbitration pursuant to the title insurance policy terms. We agree with the Court of Appeals that the Lisantis cannot be said to have consented to the arbitration clause under which Alamo has asserted a right to

arbitration. We also agree with the Court of Appeals that the statutory claims the Lisantis raise are claims for which the Legislature has provided a right to jury trial. Finally, we agree with the Court of Appeals that the regulation providing for mandatory arbitration violates the Lisantis' right to a trial by jury. Our reasons follow.

## II.

{9} The Court of Appeals concluded NMSA 1978, § 44–7–2(B) (repealed 2001) informs appellate review in this appeal and that the standard of review is de novo. *Lisanti*, 2001–NMCA–100, ¶ 6, 131 N.M. 334, 35 P.3d 989. No one disputes either conclusion, and we believe both are correct. Although the Lisantis requested a preliminary injunction, Section 44–7–2(B) provided for a summary trial on the issue of whether or not there is an agreement to arbitrate when the agreement is "in substantial and bona fide dispute." It also authorized an order staying arbitration or an order to proceed to arbitration, depending on the resolution of the issue.

{10} Article II, Section 12 of the New Mexico Constitution provides in pertinent part that "[t]he right to trial by jury as it has heretofore existed shall be secured to all and remain inviolate." New Mexico courts have consistently held that the phrase "as it has heretofore existed" refers to the right to a jury trial as that right existed in the Territory of New Mexico immediately prior to the adoption of the state constitution. *See State ex rel. Bliss v. Greenwood*, 63 N.M. 156, 161, 315 P.2d 223, 226 (1957). The first question raised on appeal is whether the Court of Appeals erred in determining that the Lisantis' non-statutory claims under the policy were claims triable to a jury at common law.

## A.

{11} Alamo argues to this Court that although common law contractual claims were triable to a jury in the Territory of New Mexico before the state constitution was adopted, that fact is not dispositive. Alamo argues that the Court of Appeals erred in identifying the relevant question, and contends that because the specific right to sue under a title insurance policy did not exist in the territorial period, it is not a right for which a jury trial is guaranteed. In support of this argument, Alamo cites *Prudential Property & Casualty Insurance Co. v. Muir*, 99 Pa.Cmmn. 620, 513 A.2d 1129 (1986).

{12} In *Muir*, the petitioner insurance company claimed that a state-mandated arbitration clause in an uninsured motorist insurance policy violated the right to trial by jury protected by Article I, Section 6 of the Pennsylvania Constitution. The right to a jury trial in Pennsylvania is guaranteed in all actions that were triable to a jury before the Pennsylvania Constitution was adopted in 1790. The court held that the mandatory arbitration clause was constitutional:

> It is obvious that the mandatory requirement of uninsured motorist coverage could not have been in existence at the time of the adoption of the Commonwealth's Constitution. Because the insurance industry in Pennsylvania is wholly governed by statute, and the right to a jury trial is not contained in the Act, there can be no violation of the constitutional right to a jury trial by requiring such binding arbitration.

513 A.2d at 1131.

{13} The Lisantis dispute the claim that there was no right to a jury trial when suing on a title insurance policy in 1912. We decline to resolve this historical issue, because we think that the relevant question is whether the more generally described cause of action, such as breach of contract or breach of fiduciary duty, was triable to a jury in 1912. *See generally Molodyh v. Truck Ins. Exch.*, 304 Or. 290, 744 P.2d 992, 996 (1987) (noting that "a jury trial on factual issues concerning an insurance policy long has been an established practice in this country.") The inquiry urged by Alamo is too narrow. It would allow the evisceration of the right to a jury trial on traditional common law claims when those claims are brought in a factual context that could not have existed in 1912. It is unreasonable, for example, to say that no jury trial right attaches to a breach of contract claim concerning the purchase of a computer simply because computers did not exist when the New Mexico Constitution was adopted.

{14} This result is supported by this Court's holding in *Harrell,* a holding we affirm. In *Harrell,* this Court held that an employee of the Carlsbad Municipal School District did not have an Article II, Section 12 right to a jury in his employment dispute with the district. Specifically, this Court noted that "[w]hen New Mexico adopted its constitution, there was no *civil action* under which public school employees aggrieved by their discharge from employment might seek relief from their employers." *Harrell,* 118 N.M. at 481, 882 P.2d at 522 (emphasis added). This Court went on to hold that "[b]ecause the *cause of action* prosecuted here did not exist at common law at the time our constitution was adopted, and because relief under the statute is essentially equitable, Harrell had no right to a jury trial." *Id.* at 482, 882 P.2d at 523 (emphasis added). It is therefore clear from *Harrell* that the cause of action, not its specific manifestation, is dispositive. The type of claim, not its subject matter, controls.

{15} The language in Article II, Section 12 protects the right to a jury trial on any common law cause of action that predates our Constitution. This clearly includes breach of contract and breach of the covenant of good faith and fair dealing. We are less confident that breach of fiduciary duty was triable to a jury at common law, but no one has tried to distinguish among the nonstatutory claims made by the Lisantis and neither do we.

### B.

{16} The fact that some of the Lisantis' claims were triable to a jury is not dispositive of the issues raised by this case, however, because Alamo argues that the Lisantis voluntarily waived that right by choosing to insure their title, rather than to rely on a title opinion issued by counsel after a search of the relevant records. Alamo suggests that the Court of Appeals analysis regarding "nonconsentual submission" to the arbitration clause might be appropriate for insurance policies that provide mandatory coverage, such as motor vehicle insurance policies, but that the Lisantis' choice to purchase title insurance ought to be distinguished from the arbitration clause at issue in *Harrell.* We are not persuaded that the Court of Appeals erred in following *Harrell.* In both *Harrell* and this case, the party seeking to avoid mandatory arbitration voluntarily accepted the relationship with the other party. In both, however, the State had required that all disputes involving that relationship be sent to arbitration. Because the decision to arbitrate the disputes could not be voluntarily accepted or rejected, we think the Court of Appeals was correct to reject Alamo's argument that the Lisantis waived the right to trial by jury.

{17} Alamo also argues that public policy in New Mexico favors the final resolution of disputes by arbitration and suggests that *Harrell* is inconsistent with that policy. In *Fernandez v. Farmers Insurance Co.,* 115 N.M. 622, 625, 857 P.2d 22, 25 (1993), we observed, "This Court has repeatedly reaffirmed the strong public policy in this state . . . in favor of resolution of disputes through arbitration." In *Dairyland Insurance Co. v. Rose,* 92 N.M. 527, 531, 591 P.2d 281, 285 (1979), we held that controversies should "be resolved by arbitration where contracts or other documents so provide." As these cases make clear, there is a strong public policy to enforce agreements to arbitrate. This is a sensible policy. We do not think, however, that the Court of Appeals disagrees, and we affirm that policy. When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement. *Id.* In this case, however, the Court of Appeals has reasoned, and we agree, that the parties to a dispute have not bargained for arbitration, because arbitration required by law cannot be described as a bargained-for result.

### C.

{18} Alamo primarily argues that the Court of Appeals erred in its application of the public rights doctrine as adopted and applied in *Harrell,* 118 N.M. at 482, 882 P.2d at 523. Properly applied, Alamo argues, that doctrine supports its position that the trial court properly ordered arbitration pursuant to the terms of the title insurance policy. Specifically, Alamo contends that when the

Legislature "heavily regulates" an industry, the Legislature may assign the adjudication of disputes within that industry to a non-judicial forum such as arbitration.

{19} The public rights doctrine is a creation of the United States Supreme Court. In *Atlas Roofing Co. v. Occupational Safety & Health Review Commission*, 430 U.S. 442, 450, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Supreme Court held that

> At least in cases in which "public rights" are being litigated-*e.g.*, cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact—the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible.

{20} The doctrine was extended to private lawsuits seeking enforcement of public rights in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54–55, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), where the Supreme Court held

> The crucial question, in cases not involving the Federal Government, is whether "Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, [has] create[d] a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." If a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact; and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court. If the right is legal in nature, then it carries with it the Seventh Amendment's guarantee of a jury trial.

(alteration in original) (citation and footnote omitted).

{21} In *Harrell*, this Court relied on the public rights doctrine articulated in *Atlas Roofing* and *Granfinanciera* as support for the proposition that the Legislature in some circumstances can delegate resolution of a claim to a non-judicial body. *Harrell*, 118 N.M. at 482, 882 P.2d at 523. Relying on *Atlas Roofing*, this Court held that since Harrell sought a remedy against an agent of the state the public rights doctrine was applicable, "[e]ven if we interpreted Harrell's claim as stating a legal claim cognizable at common law at the time our constitution was adopted...." *Harrell*, 118 N.M. at 482, 882 P.2d at 523. Without discussing the expansion of the doctrine in *Granfinanciera* to private causes of action, this Court cited to *Granfinanciera* to generally support its conclusion that there was "no constitutional infirmity in the lack of provision for a jury trial." *Harrell*, 118 N.M. at 482, 882 P.2d at 523.

{22} The Supreme Court plainly stated in *Granfinanciera* that the class of "public rights" the adjudication of which may be assigned to administrative agencies or courts of equity sitting without juries is more expansive than suggested in *Atlas Roofing*. *Granfinanciera*, 492 U.S. at 53, 109 S.Ct. 2782. Similarly, in *Harrell*, this court left open the possibility that "a legal claim cognizable at common law at the time our constitution was adopted," might be assigned for resolution "to an adjudicative body that does not use a jury as factfinder." *Harrell*, 118 N.M. at 482, 882 P.2d at 523. Consequently, the public rights doctrine under either the federal Constitution or the state constitution appears to be an evolving concept. *See generally* Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 2.8, at 99–101 (3d ed.1994) (discussing the implications of the doctrine for administrative adjudication).

{23} Nevertheless, we must reject Alamo's claim that the public rights doctrine applies to any heavily-regulated industry. We understand the doctrine to require a right of action that is "closely intertwined" with a regulatory program. *Granfinanciera*, 492 U.S. at 54, 109 S.Ct. 2782. *See also Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1331 (2d Cir.1993) ("[I]f a party is going to be deprived of as fundamental a constitutional right as a jury trial, the controversy must be inextricably intertwined with a public right; the 'involvement' may not be casual or vague."). Further, the doctrine is "not at all

implicated" in "wholly private tort, contract, and property cases." *Granfinanciera,* 492 U.S. at 51, 109 S.Ct. 2782 (quoting *Atlas Roofing,* 430 U.S. at 458, 97 S.Ct. 1261). The Lisantis assert rights that we believe must be characterized as casually or indirectly related to the regulatory scheme created by the legislature. The United States Supreme Court has said that "state-law causes of action for breach of contract or warranty are paradigmatic private rights." *Id.* at 56, 97 S.Ct. 1261. We conclude that the rights the Lisantis assert on these facts are the equivalent of the "paradigmatic private rights" identified in *Granfinanciera. Id.* We therefore conclude that Alamo's reliance on the public rights doctrine is misplaced.

**D.**

{24} Alamo has argued that the opinion of the Court of Appeals is preempted by 9 U.S.C. §§ 1–16 (2000). We did not grant certiorari on that question, and it was not raised to the trial court or to the Court of Appeals. We therefore do not address it.

**III.**

{25} We affirm the Court of Appeals' determination that the Lisantis did not waive their right to have factual issues that were triable to a jury at common law at the time of statehood ultimately resolved by a jury in this case. Their purchase of a title insurance policy, the terms of which were mandated by statute and regulation, was not the equivalent of a voluntary contractual agreement to arbitration. We also affirm the Court of Appeals determination that the Lisantis' nonstatutory claims were the type of claims that were triable to a jury at the time of statehood and that the public rights doctrine announced by the United States Supreme Court is not applicable on these facts. Because the regulation requiring mandatory arbitration violates the Lisantis' right to trial by jury, we hold that it is unenforceable, and we reverse the district court's order sending the matter to arbitration. We remand for further proceedings consistent with this opinion.

{26} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, GENE E. FRANCHINI, Justice and PETRA JIMENEZ MAES, Justice.