2004-NMSC-002

84 P.3d 65

Debbie McMILLAN, Plaintiff,

v.

ALLSTATE INDEMNITY COMPANY,
Defendant.

Yvonne Gallegos, as guardian and next
friend of Jerrica A., a minor child,
Petitioner–Appellee,

v.

Allstate Indemnity Company,
Respondent–Appellant.

Nos. 27,897, 28,055.

Supreme Court of New Mexico.

Nov. 20, 2003.

Rehearing Denied Jan. 22, 2004.

Titus &. Murphy Law Firm, Victor A. Titus, Farmington, NM, David J. Berardinelli, Santa Fe, NM, for Plaintiff–Appellee.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Lisa Mann, Jennifer A. Noya, Albuquerque, NM, for Defendant–Appellant.

**OPINION**

CHÁVEZ, Justice.

{1} In this consolidated case against Allstate, two automobile insurance policyholders (Insureds) challenge the validity of a clause in Allstate's standard uninsured motorist (UM) insurance endorsement, approved by the Superintendent of Insurance, that provides for arbitration of UM claims only upon the consent of both Allstate and the insured. After Allstate disputed the extent of their respective claims, Insureds each demanded arbitration. Allstate declined, choosing instead to litigate the underlying disputes in court. Insureds then each brought separate actions in state district court to compel arbitration, arguing that the Department of Insurance regulations governing UM insurance coverage, consistent with New Mexico law and public policy, mandate binding arbitration of UM claims. Allstate countered that New Mexico statutory and common law has never mandated binding arbitration in UM disputes, that the Superintendent of Insurance lawfully approved the consensual arbitration provision, and that the provision is therefore valid. Finally, Allstate contended that to compel arbitration would violate its right to a jury trial, protected under Article II, Section 12 of the New Mexico Constitution.

{2} In Petitioner Gallegos' case, the state district court granted her petition to compel arbitration, declaring invalid the consensual arbitration provision in the insurance contract on the ground that it conflicts with the Superintendent of Insurance's mandatory form of UM endorsement. Allstate appealed, and the Court of Appeals certified the case to this Court. In Plaintiff McMillan's case, Allstate removed the state case to federal court. The federal court judge, in accordance with Rule 12–607 NMRA 2003, certified the following question to this Court, the answer to which will resolve both cases on appeal:

Whether New Mexico law requires arbitration of an uninsured motorist claim upon the unilateral demand of either the insurer or the insured where the insurance policy states that disputes regarding whether the insured is entitled to receive payment un-

der the policy, or the amount of payment due, will be submitted to arbitration only if both the insurer and insured consent.

{3} We consolidated the cases on appeal and now answer the certified question in the negative. This Court recently reaffirmed New Mexico's announced policy of encouraging binding arbitration of UM claims, stressing the significance of a voluntary agreement to arbitrate. *See Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003–NMSC–011, ¶¶ 13, 19, 133 N.M. 661, 68 P.3d 901. Nevertheless, neither this Court nor the Legislature has ever expressly mandated arbitration as the sole method for the adjudication of UM claims. Furthermore, the regulations promulgated by the Department of Insurance do not require binding arbitration where the Superintendent of Insurance has approved a substitute UM endorsement that is not less favorable to the insured. We cannot conclude that preserving a potentially important constitutional right to a jury trial, absent a voluntary agreement to binding arbitration, is less favorable to the insured. For these reasons, we hold that the Allstate contract's consensual arbitration provision does not violate New Mexico law or public policy and is therefore enforceable.

**I. The Legislature Does Not Require Arbitration in the Resolution of UM Disputes**

{4} Insureds argue that arbitration is mandated by the UM statute. They rely upon the current NMSA 1978, § 66–5–303 (2003), conceding that before Section 66–5–303 was repealed and reenacted in 2003, the Legislature did not mandate arbitration as the sole means of resolving UM claims. The original Section 66–5–303—enacted in 1969, superceded by the Uniform Arbitration Act (UAA), *see Dairyland Ins. Co. v. Rose*, 92 N.M. 527, 591 P.2d 281 (1979), and repealed by the Legislature in 2003—states that "[a]ny party aggrieved by an arbitration award" concerning a UM claim dispute has a de novo right of appeal in state district court. Section 66–5–303 (repealed 2003). If the Legislature had intended to compel binding arbitration of all UM disputes, it would be incongruous for the Legislature to have in-

corporated such a right of de novo appeal. This right of de novo appeal following an arbitration award bolsters Insureds' concession that prior to the 2003 repeal and reenactment of Section 66–5–303, the Legislature did not mandate arbitration as the sole means of resolving UM disputes.

{5} Because the 2003 reenactment would not directly affect the status of Insureds' claims, which were filed before the new statute took effect, we understand Insureds' argument to be that as a result of the new statute, there is now a discernible public-policy preference for mandatory arbitration, and that this public policy should inform our resolution of the issues on appeal. Insureds, however, point to no specific language in the current UM statute that may be construed to require binding arbitration as the exclusive means of resolving UM coverage disputes. The UM statute does regulate when and to whom the costs of arbitration may be allotted, § 66–5–302, and the procedure by which a district court must confirm or vacate an arbitration award, § 66–5–303. While these provisions may suggest a public-policy preference for the voluntary arbitration of UM disputes, they fall short of mandating arbitration in such cases.

{6} The reenacted Section 66–5–303 states:

After a party to an arbitration proceeding involving an uninsured motorist receives notice of an award, the party may make a motion to the district court for an order confirming the award, at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to Section 44–7A–21 or [Section] 44–7A–25 NMSA 1978 or is vacated pursuant to Section 44–7A–24 NMSA 1978.

This new language did indeed repeal the right of an aggrieved party to a de novo appeal. Nevertheless, the most that can be inferred concerning the legislative intent underlying the current Section 66–5–303 is that arbitration ought to be binding in a UM dispute where the parties had agreed to arbitrate. *See Padilla*, 2003–NMSC–011, ¶¶ 13, 18 (enforcing the parties' mutual contractual agreement to binding arbitration following the severance of a contractual provision that violated the UM statute and public policy). The current Section 66–5–303 fails to evince a desire by the Legislature to make binding arbitration the exclusive means of resolving UM disputes.

{7} On the contrary, one of the UAA provisions to which the statute refers, NMSA 1978, § 44–7A–24(A)(5) (2001), provides that the district court "shall vacate" the award where "there was no agreement to arbitrate." By incorporating Section 44–7A–24, the current Section 66–5–303 expressly contemplates a district court vacating an arbitration award where the parties did not consent to arbitration. It would be untenable, therefore, to hold that the Legislature, in drafting the current UM statute, intended to compel arbitration where the parties had not agreed to arbitrate. *See Quintana v. N.M. Dep't of Corr.*, 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983) ("[P]rovisions of a statute, together with other statutes *in pari materia*, must be read together to ascertain the legislative intent.").

{8} Beyond the UM statute itself, Insureds allege that Allstate's consensual arbitration provision is "a direct affront to the provisions of the current [Uniform] Arbitration Act." As noted, however, the UAA provides no basis for concluding that the Legislature intended to compel arbitration where there was no agreement to arbitrate. While the UAA does evidence a legislative intent to encourage voluntary agreements to arbitrate, it invalidates arbitration awards where there existed no prior agreement to arbitrate. Under procedural provisions of the UAA, a district court is given authority to "order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." NMSA 1978, § 44–7A–8(A)(2) (2001).[1] "If the court finds that there is no enforceable agreement [to arbitrate], *it may not* . . .

---

1. We note that we are only analyzing the current Uniform Arbitration Act as an aid to understanding current New Mexico public policy. Application of the UAA in effect when Insureds' claims arose would not result in a different outcome, as it too enforced arbitration agreements only where there was a prior agreement to arbitrate. *See* NMSA 1978, §§ 44–7–2(A), –2(B), and – 12(A)(5) (repealed 2001).

*order the parties to arbitrate."* Section 44–7A–8(C) (emphasis added). Further, where "there was no agreement to arbitrate," the district court "shall vacate" the award. Section 44–7A–24(A)(5). Given the UAA's prohibition against compelling arbitration where there was no agreement to arbitrate, it would be inconsistent to hold that the public policy underlying the UAA requires binding arbitration of all UM claims. Where, as here, there was no agreement to arbitrate, the UAA neither compels parties to arbitrate, nor does it permit a court to grant a motion to compel arbitration.

{9} Despite our conclusion that the Legislature has not expressly mandated arbitration as the exclusive means of resolving UM disputes, we recognize that in New Mexico there is a strong public-policy preference in favor of resolving disputes through arbitration. *See Lisanti v. Alamo Title Ins.,* 2002–NMSC–032, ¶ 17, 132 N.M. 750, 55 P.3d 962. Although we acknowledge some evidence that the virtues of mandatory arbitration may be overstated, *see, e.g.,* William P. Lynch, *Problems With Court–Annexed Mandatory Arbitration: Illustrations from the New Mexico Experience,* 32 N.M. L.Rev. 181 (2002), arbitration is encouraged as a means of relieving congestion in the court system, speeding up resolution of disputes, and making the resolution of cases more economical to all parties. *See Stinbrink v. Farmers Ins. Co.,* 111 N.M. 179, 182, 803 P.2d 664, 667 (1990). The New Mexico Legislature has concluded, and this Court has repeatedly held, that where the parties have agreed to arbitrate a dispute, courts are generally bound to enforce the outcome of arbitration. NMSA 1978, § 44–7A–7(A) (2001); *see Lisanti,* 2002–NMSC–032, ¶ 17 ("When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement."); *Fernandez v. Farmers Ins. Co.,* 115 N.M. 622, 625, 857 P.2d 22, 25 (1993); *State ex rel. Hooten Constr. Co. v. Borsberry Constr. Co.,* 108 N.M. 192, 193, 769 P.2d 726, 727 (1989); *Rose,* 92 N.M. at 530, 591 P.2d at 284.

{10} Here, however, the issue is not whether our courts should enforce a lawful agreement to arbitrate, but instead whether New Mexico law compels arbitration where one of the parties has not consented.

This Court has noted that "a motion to compel arbitration is essentially a suit for specific performance of an agreement to arbitrate." *Shaw v. Kuhnel & Assocs.,* 102 N.M. 607, 608, 698 P.2d 880, 881 (1985), *superseded by statute as stated in Aguilera v. Palm Harbor Homes, Inc.,* 2002–NMSC–029, 132 N.M. 715, 54 P.3d 993; *accord Santa Fe Techs., Inc. v. Argus Networks, Inc.,* 2002–NMCA–030, ¶ 52, 131 N.M. 772, 42 P.3d 1221, *cert. denied,* No. 27,324, 131 N.M. 737, 42 P.3d 842, *and cert. denied,* No. 27,285, 131 N.M. 737, 42 P.3d 842 (2002) ("[A]rbitration clauses are governed by contract law."). Courts must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement. *See Christmas v. Cimarron Realty Co.,* 98 N.M. 330, 332, 648 P.2d 788, 790 (1982). New Mexico public policy favors freedom to contract and enforces contracts that do not violate law or public policy. *See Reagan v. McGee Drilling Corp.,* 1997–NMCA–014, ¶ 15, 123 N.M. 68, 933 P.2d 867. As this Court held in *K.L. House Construction Co. v. City of Albuquerque,* 91 N.M. 492, 494, 576 P.2d 752, 754 (1978):

> When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters. Barring such limiting language, the courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration. If not, arbitration should be refused.

Where, as here, the parties plainly contracted to arbitrate only upon the consent of both parties, such a contract must be enforced unless it violates New Mexico law or public policy. We find no statutory or public-policy grounds to compel arbitration in this case.

## II. The Regulations Governing Uninsured and Unknown Motorists Coverage (UUMC) Do Not Require Binding Arbitration

{11} Insureds next argue that the consensual arbitration provision is invalid because

Department of Insurance regulations require binding arbitration in the resolution of UM disputes. They point out that UM coverage must be provided "according to the rules and regulations promulgated by, and under provisions filed with and approved by, the [S]uperintendent of [I]nsurance." Section 66–5–301(A) (1983). The UUMC regulations in relevant part state that "[a]ll forms of endorsement for uninsured and unknown motorists coverage shall contain the provisions in 13.12.3.11 through 13.12.3.17 NMAC." 13.12.3.10 NMAC. These standardized UM provisions, intended to be inserted into UM endorsements, contain two clauses pertaining to dispute resolution. The first provision, titled "mandatory arbitration," mandates binding arbitration as the sole mode of dispute resolution between claimant and insurer. 13.12.3.17(H)(1) NMAC. The second, titled "optional arbitration," empowers the insured to demand that arbitration be carried out according to the rules and regulations of the American Arbitration Association. 13.12.3.17(H)(2) NMAC. Neither of these provisions appears in Allstate's UM endorsement. Insureds argue, therefore, that the Allstate endorsement violates the UUMC regulations, despite the Superintendent's approval of the endorsement. They contend the Allstate endorsement must be reformed to include the "mandatory arbitration" provision prescribed in the UMCC regulations, supplanting the consensual arbitration provision approved by the Superintendent.

{12} We agree with Insureds' statement that the Superintendent's mere approval of an insurance contract does not validate a contract that is otherwise in violation of the UM statute or its underlying public policy. *See Cont'l Ins. Co. v. Fahey*, 106 N.M. 603, 605, 747 P.2d 249, 251 (1987) (striking an exclusionary clause that violated the intent of the UM statute notwithstanding the Superintendent's approval), *superseded by statute on other grounds as stated in Mountain States Mut. Cas. Co. v. Vigil*, 121 N.M. 812, 815, 918 P.2d 728, 731 (Ct.App. 1996); *Padilla*, 2003–NMSC–011, ¶ 13 (striking an arbitration provision that violated the public policy underlying the UM statute). Nevertheless, although a reviewing court is

obliged to correct a misapplication of the law, it "generally may not substitute its judgment for that of the administrative agency." *Mutz v. Mun. Boundary Comm'n*, 101 N.M. 694, 697, 688 P.2d 12, 15 (1984).

{13} Insureds argue the Superintendent acted outside his statutory authority when he approved Allstate's UM endorsement containing the consensual arbitration provision. We disagree. The Superintendent possesses authority under both the Insurance Code and the UUMC regulations to approve a substitute UM endorsement that does not precisely conform to the endorsement prescribed in the UUMC regulations. Section 59A–18–17(B) of the Insurance Code states:

No policy shall contain any provision inconsistent with or contradictory to any standard or uniform provision used or required to be used, *but the [S]uperintendent may approve any substitute provision* which is, in his [or her] opinion, not less favorable in any particular to the insured ... than the provision otherwise required....

NMSA 1978, § 59A–18–17(B) (1993) (emphasis added). Contrary to Insureds' assertion, it is not the case that every insurance policy issued in New Mexico is required to incorporate unconditionally the provisions prescribed by the Department of Insurance. Although every policy is required to conform to "any standard or uniform provision," including in this case the standard provisions prescribed in the UUMC regulations, the Superintendent clearly has discretion to approve a "substitute provision" that is "not less favorable" to the insured.

{14} The UUMC regulations themselves adopt and incorporate this statutory authority to approve a "substitute" UM endorsement: "Nothing contained in this rule shall prohibit any insurance company from filing an endorsement providing benefits for uninsured and unknown motorists that, in the opinion of the [S]uperintendent of [I]nsurance, is more favorable to the policyholder than the provisions permitted by the endorsement prescribed in this rule." 13.12.3.8 NMAC. This authority to approve a substi-

tute endorsement is substantially similar to, and such authority is properly conveyed by, the "not less favorable" standard articulated in Section 59A–18–17(B). Construing the Insurance Code and the UUMC regulations together with the delegation of authority to the Superintendent under Section 66–5–301(A), we conclude that the Legislature has delegated to the Superintendent the authority to approve a UM endorsement that the Superintendent deems to be more favorable to the insured.

{15} In this case we believe Allstate's consensual arbitration provision generally does provide a more favorable benefit to the insured than the mandatory arbitration provision prescribed in the UUMC regulations. First, the consensual arbitration provision approved by the Superintendent provides a mechanism for binding arbitration that is consistent with the public-policy preference in New Mexico for voluntary binding arbitration agreements. Second, the approved provision permits either party to forego arbitration in favor of a trial by jury. We have held elsewhere that a mandatory binding arbitration clause in an insurance contract, imposed on the parties by a Department of Insurance regulation, violates the parties' right to a trial by jury, guaranteed under Article II, Section 12 of the New Mexico Constitution. *See, e.g., Lisanti,* 2002–NMSC–032, ¶¶ 15, 25 (applying Article II, Section 12 in striking down a Department of Insurance regulation that required all property title insurance claims under $1,000,000 to be resolved through arbitration). Given the constitutional concerns that would be raised by compelling two private entities to arbitrate a private contract claim, it would be truly anomalous for us to find that it was an abuse of discretion for the Superintendent to approve a contract provision that preserved both parties' right to a trial by jury.

### III.  Other Public–Policy Concerns

{16} Insureds further argue that it would violate the remedial intent of the UM statute to allow Allstate to impose additional expense and delay on them by litigating issues of coverage or damages, rather than submitting these issues to arbitration. Quoting from the Court of Appeals decision in *Padilla,* Insureds argue that "to the extent the insured incurs litigation costs in order to obtain the benefits of uninsured motorist coverage, the value of such coverage is diluted." *See Padilla v. State Farm Mut. Auto. Ins. Co.,* 2002–NMCA–001, ¶ 17, 131 N.M. 419, 38 P.3d 187, *modified in part,* 2003–NMSC–011, 133 N.M. 661, 68 P.3d 901. Here, Insureds argue, not to compel arbitration would "dilute" their coverage by depriving them of a more speedy, cost-effective method of resolving UM disputes.

{17} We agree with Insureds that the UM statute is designed to protect individuals against the hazard of culpable but uninsured motorists, *see Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 156, 803 P.2d 243, 245 (1990), and to place the insured in the same position as he or she would have been had the tortfeasor had liability insurance, *see Padilla,* 2003–NMSC–011, ¶ 9. We do not see, however, how Allstate's consensual arbitration provision violates this legislative intent. If the alleged tortfeasor had owned liability insurance, and the alleged tortfeasor's insurer had disputed liability or the extent of the damages, McMillan and Gallegos necessarily would have litigated their claims. Just as in any tort action, the injured party would have the burden of proving duty, breach of duty, proximate cause and damages to a jury, and the alleged tortfeasor would have a fair opportunity to rebut the plaintiff's evidence and to plead affirmative defenses, including comparative negligence. Here, Allstate has disputed the extent of the damages claimed by Insureds and has requested that their respective claims be tried in a court of law. This is nothing more than Insureds could expect had the alleged tortfeasors owned liability insurance.

{18} Furthermore, the consensual arbitration provision at issue here does not confer upon the insurer, as State Farm's "escape hatch" provision did in *Padilla,* a greater leverage over the insureds in demanding litigation. Unlike *Padilla,* the insureds under this contract have an equal right of refusal of arbitration, and therefore an equal right of access to the courtroom. The provision operates symmetrically to allow either party to

avoid compulsory arbitration. We cannot say that Allstate's consensual arbitration provision, merely by raising the prospect of litigation, puts the insured in a worse position than he or she would have been had the tortfeasor had liability insurance.

{19} Insureds argue that we should invalidate the consensual arbitration provision because its hidden purpose is "to impose additional expense and delay on the insured" through oppressive litigation costs and delay tactics by the insurer. Insureds, however, have advanced no evidence either that Allstate has employed such tactics in this case, or that insurers generally are more likely to employ such tactics in UM cases than in other types of insurance claim disputes. Moreover, effective mechanisms already exist to discourage such behavior. First, a prevailing insured is entitled to recover from the insurer certain costs of litigation pursuant to Rule 1–054(D)(2) NMRA 2003. Second, the trial court has the discretion to award prejudgment interest, an award that "ensures that just compensation to the tort victim is not eroded by the dilatory tactics of the tortfeasor." *Coates v. Wal–Mart Stores, Inc.*, 1999–NMSC–013, ¶ 55, 127 N.M. 47, 976 P.2d 999 (quoted authorities and quotation marks omitted); *see* NMSA 1978, § 56–8–4(B) (1993). In addition, in a recent amendment to the New Mexico Rules of Civil Procedure, if the insurer rejects an offer of settlement made by a claimant prior to litigation, and the claimant obtains a judgment at trial that is more favorable than the offer of settlement, the claimant is entitled to "double the amount of costs incurred after the making of the offer." Rule 1–068(A) NMRA 2003. Insureds have not persuaded us that such procedural rules, designed to discourage precisely the conduct they fear, are inadequate in the context of UM litigation.

## IV. Conclusion

{20} We conclude that Allstate's consensual arbitration provision in its standard UM endorsement does not violate New Mexico law or public policy. While in no way discounting New Mexico's public-policy preference favoring arbitration, we hold that the Legislature has not expressly required binding arbitration in the adjudication of UM disputes, and the rules and regulations promulgated by the Department of Insurance do not require binding arbitration where the Superintendent of Insurance has approved a substitute UM endorsement that is more favorable to the insured. We hold that, in the context of UM disputes between insurer and insured, where the UM endorsement provides for arbitration only upon the consent of both parties, and where the Superintendent of Insurance has approved such an endorsement, New Mexico law does not compel binding arbitration. Because we hold Allstate's consensual arbitration provision to be valid, we do not reach the constitutional issue raised by Allstate, that arbitration of UM disputes, mandated by statute or regulation, would violate Article II, Section 12 of the New Mexico Constitution. Because we answer the certified question in the negative, we reverse the district court in Petitioner Gallegos' case and remand for further proceedings consistent with this opinion.

{21} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and RICHARD C. BOSSON, Justices.