This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**ROBERTO J. BONILLA AND ALICIA BONILLA, husband and wife; JOHN R. JR. AND NANCY J. BRENNA, husband and wife, DELINDA CHAVEZ, an individual; SARA AND TAYLON L. CHESSER, husband and wife; SHANNON AND ADELA C. DAVIS, husband and wife; RONALD S. FABER, an individual; ESEQUIEL J. AND ANGELA S. GABALDON, husband and wife; ROBERT AND LEANE L. GURRY, husband and wife; TOBY AND APRIL HALL, husband and wife; MICHAEL AND DENISE A. KEMP, husband and wife; EDWARD S. AND ROSA D. MARTINEZ, husband and wife; JOSE AND LILIA E. MORALES, husband and wife; KEVIN W. MUNDORFF AND CYNTHIA R. RIENHARDT, trustee of the RIENHARDT Revocable Trust; JOSEPH G. AND THERESA PHILLIPS, husband and wife; YAMIL R. QUINONES-RIVERA, an individual; MANUELA D. RODRIGUEZ, an individual; JULIE E. RONGONE, an individual; JOSEPH AND RUTH R. SAAVEDRA, husband and wife; AUGUSTINE SANCHEZ, an individual; RAYMOND L. SAYER, an individual; CHAD SESSLER, an individual, JESSE T. AND LILLIAN B. SIMS, husband and wife; LYNDON J. AND TINA THOMASON, husband and wife; EVELYN M. THORNE, an individual; EDDIE WEATHERINGTON, an indivdual; STEPHEN R. AND MELBA J. WHITE, husband and wife,**

Plaintiffs,

**v.**                                                            No. 34,751

**CENTEX CONSTRUCTION OF NEW MEXICO, a Delaware limited liability company; CENTEX HOMES,  a Michigan corporation; CENTEX**

**REAL ESTATE CONSTRUCTION COMPANY, a New Mexico limited liability company; CENTEX HOMES, a Nevada general partnership; CENTEX REAL ESTATE CORPORATION, a Nevada corporation; JOHN DOES I-X and their spouses; WHITE CORPORATION I-X; BLACK PARTNERSHIP I-X; and GRAY LIMITED LIABILITY COMPANIES I-X,**

Defendants,

**and**

**CENTEX CONSTRUCTION OF NEW MEXICO, LLC, a Delaware limited liability company; CENTEX HOMES, a Nevada General Partnership; and CENTEX REAL ESTATE CORPORATION, a Nevada corporation,**

Defendants/Third-Party Plaintiffs-Appellees,

**v.**

**ASPEN CONCRETE, LLC; COTTEN CONCRETE, INC.; CUSTOM GRADING, INC.; JIM THE BUILDER, INC.; L & S PLUMBING PARTNERSHIP, LTD.; PREMIER CONCRETE, LLC; PRIORITY PLUMBING AND HEATING, INC.; PYRAMID CONCRETE CONTRACTORS, INC.; WRIGHT CONNECTION PLUMBING, LLC; VINYARD & ASSOCIATES, INC.; CURB SOUTH, LLC; JOHN DOES I-X and JANE DOES I-X and their spouses; WHITE CORPORATION I-X; BLACK PARTNERSHIP I-X and GRAY LIMITED LIABILITY CORPORATION I-X,**

Third-Party Subcontractor Defendants-Appellants,

**and**

2

**AMERISURE INSURANCE COMPANY; BITUMINOUS CASUALTY CORPORATION; CINCINNATI INSURANCE COMPANY; EMPLOYERS MUTUAL CASUALTY COMPANY; FREESTONE INSURANCE COMPANY f/k/a DALLAS NATIONAL INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; MARYLAND CASUALTY COMPANY; MOUNTAIN STATES MUTUAL CASUALTY COMPANY; MOUNTAIN STATES INDEMNITY COMPANY; OHIO CASUALTY INSURANCE COMPANY; SOUTHERN VANGUARD INSURANCE COMPANY; DOE INSURANCE COMPANY NO. 1; DOE INSURANCE COMPANY NO. 2; DOE INSURANCE COMPANY NO. 3,**

Third-Party Insurance Defendants.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James L. Sanchez, District Judge**

Carpenter & Hazlewood Delgado & Bolen, P.C.
Mark A. Holmgren
Tempe, AZ

for Plaintiffs

Michael J. Craddock
Dallas, TX

for Defendants/Third-Party Plaintiffs

Riley Shane & Keller, P.A.
Mark J. Riley
Tiffany L. Sanchez
MacDonnell Gordon
Albuquerque, NM

Law Offices of Bruce Collins
Robert Bruce Collins
Julie Koschitial
Audra Davie

Holly Rene Harvey
Albuquerque, NM

Butt, Thornton & Baehr, P.C.
Martin Diamond
Albuquerque, NM

for Third-Party Subcontractor Defendants

Doughty Alcaraz & DeGraw, P.A.
Robert M. Doughty III
Monica Sedillo
Albuquerque, NM

for Third-Party Defendant Curb South LLC

## MEMORANDUM OPINION

**ZAMORA, Judge.**

**{1}** Third-party Defendant Curb South appeals the district court's order compelling Curb South to participate in arbitration proceedings. We issued a notice proposing to summarily affirm, and Curb South has filed a memorandum opposing such affirmance. We have carefully considered the arguments raised in the memorandum, but we continue to believe the district court's decision was correct, as we discuss below.

**{2}** In response to our notice of proposed summary disposition, Curb South makes two main arguments. First, Curb South contends Centex did not properly invoke the arbitration clause contained in the contract, and in fact waived the arbitration issue as

4

a result of conduct engaged in during the litigation. Second, Curb South argues that the requirements of NMSA 1978, Section 44-7A-11 (2001), have not been met, and the district court therefore erred in consolidating the Centex/Curb South arbitration with a different arbitration proceeding between Centex, the Homeowner Plaintiffs, and possibly other parties.

{3}    In support of the first argument Curb South contends that Centex merely indicated an intent to invoke the arbitration clause, and never actually invoked it. Curb South points out that Centex failed to demand arbitration against Curb South in its first amended complaint, even though it demanded arbitration with respect to other third-party defendants. [RP Vol. 3, 582-86] [MIO 6] Centex also omitted Curb South from a motion for arbitration filed against other parties in the case, three months after filing the first amended complaint. [RP Vol. 6, 1573-77] Thus, Curb South argues in essence that Centex waived any right to arbitration that it might have had under the parties' contract. We disagree.

{4}    Centex filed its first amended complaint, bringing a third-party claim against Curb South for the first time, on June 11, 2014. [RP Vol. 3, 571] Three and one-half months later, on September 25, 2014, Centex sent a letter to Curb South, setting out the terms of the arbitration provision contained in the parties' contract and asking if Curb South would agree to arbitrate under a modified version of that provision. [RP

Vol. 7, 1961-62] Centex then, on November 4, 2014, filed a pleading arguing that the arbitration provision is mandatory, and stating that Centex had formally demanded mediation, a required prerequisite to arbitration under the contract's provision, and intended to "continue to follow any conditions precedent to arbitration." [RP Vol. 8, 1979-82] These actions sufficiently informed Curb South that Centex was invoking the permissive arbitration provision contained in the parties' contract.

{5} As Curb South points out, however, there is a question as to whether Centex waived its right to invoke the arbitration provision, due to its conduct during the litigation. When a party initiates or participates in litigation, as Centex did here, and only later attempts to invoke an arbitration provision, the possibility of a waiver arises and we must determine whether such a waiver has occurred. *See, e.g.*, *Am. Fed'n of State, Cty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-049, 299 P.3d 441. Our analysis begins with a presumption in favor of arbitration and against waiver; that presumption is so strong that "all doubts as to whether there is a waiver must be resolved in favor of arbitration." *Id.* ¶ 10 (internal quotation marks and citation omitted). The party opposing arbitration will only be granted relief if it can show it was prejudiced by the other party's actions; the type of prejudice involved normally consists of trial preparation that is undertaken due to the belief that the other party does not intend to make a demand for arbitration. *Id.* ¶¶ 10, 20. A primary

6

consideration is the extent to which the party now seeking arbitration had already invoked the machinery of the judicial system, and in doing so provoked reliance by the other party on the fact that the case would be litigated in court rather than arbitrated. *Id.* ¶¶ 10-12, 17-19.

{6}     The mere instigation of litigation does not automatically constitute any invocation of the judicial machinery. *Id.* ¶ 27; *see Wood v. Millers Nat'l Ins. Co.*, 1981-NMSC-086, ¶ 7, 96 N.M. 525, 632 P.2d 1163. Instead, a "point of no return" is reached if the party wishing to compel arbitration, here Centex, invokes the district court's discretionary power on a question other than the arbitration issue. *See Wood*, 1981-NMSC-086, ¶ 7. That point may also be reached where a party extensively utilizes discovery procedures that are not available in the arbitration process, and only demands arbitration after the desired discovery has been obtained. *See Bd. of Educ. Taos Mun. Schs. v. The Architects, Taos*, 1985-NMSC-102, ¶ 13, 103 N.M. 462, 709 P.2d 184. Instances in which a party has been found to have waived arbitration by invoking the judicial machinery include cases in which the party unsuccessfully filed a motion to dismiss and only then demanded arbitration, *see Wood*, 1981-NMSC-086, ¶¶ 6-7; engaged in extensive discovery over a period of several months, when the scope of discovery would have been much more limited in arbitration, *see The Architects*, 1985-NMSC-102, ¶ 13; and requested a preliminary injunction and

7

unsuccessfully litigated that request through the hearing stage, *see AFSCME*, 2013-NMCA-049, ¶ 19. On the other hand, where nothing of consequence occurred in the litigation prior to the demand for arbitration, and the "judicial waters had not been tested" because no hearings had been held and the case was not at issue, our Supreme Court held that arbitration had not been waived. *Bernalillo Cty. Med. Ctr. Emps' Ass'n v. Cancelosi*, 1978-NMSC-086, ¶¶ 7, 12, 92 N.M. 307, 587 P.2d 960.

{7}     The facts of this case are much more akin to those presented by *Cancelosi* than to the facts of *The Architects, Wood,* or *AFCSME*. In the three-and-one-half months that passed from the time Centex brought Curb South into the case to the time it gave notice to Curb South that arbitration would be an issue between the parties, Centex filed no substantive motions of any kind and requested no substantive relief from the district court. There is no indication in the record proper that Centex engaged in any type of discovery directed at Curb South during this time, and Curb South has not directed our attention to any such efforts. Centex simply did not in any manner test the judicial waters or request any type of relief from the district court that was inconsistent with an intent to arbitrate its dispute with Curb South.

{8}     We note Curb South's argument that, prior to bringing Curb South into the litigation, Centex had been "filing motions with the District Court and exchanging discovery with other parties." [MIO 6] However, none of these actions had any

8

relevance to Centex's arbitration agreement with Curb South, and therefore they cannot be considered the type of invocation of judicial machinery that would waive the right to enforce that agreement. As the cases discuss, the point of the invoked-judicial-machinery factor is to prevent prejudice to the party opposing arbitration, as a result of litigation efforts that party is forced to engage in while the case is pending in district court. *See AFSCME*, 2013-NMCA-049, ¶¶ 10-12, 17-20. Curb South clearly was not required to engage in any litigation efforts at all before it was brought into the lawsuit by Centex as a third-party Defendant. Thus, we focus only on the litigation actions Centex took with respect to Curb South itself, rather than with respect to other parties to the litigation. As we have discussed above, none of those actions elicited any kind of judicial hearing or a ruling on any substantive matter, and no significant discovery steps were taken by Centex against Curb South. We therefore hold that Centex did not invoke the judicial machinery to the extent required to constitute a waiver of the arbitration provision, especially considering the strong presumption against waiver that both the district court and this Court are required to apply.

{9} A second important consideration in addressing claims of waiver is the extent to which the party opposing arbitration has been prejudiced by the other party's delay in invoking the arbitration clause. *Id.* ¶¶ 10, 20. As we pointed out above, this prejudice most commonly takes the form of efforts that have been taken to prepare for

9

trial under the assumption that the arbitration provision will not be invoked. *Id.* Curb South does not point to anything it may have done to litigate this case against Centex. There is no indication that Curb South responded to any discovery propagated by Centex, or sent any discovery requests of its own to Centex. Furthermore, Curb South was obviously aware of the possibility that arbitration rather than litigation would become the method of resolving the various parties' disputes, as Curb South felt compelled to file a motion requesting a determination as to whether it was required to participate in arbitration proceedings. [RP Vol. 7, 1917] In sum, Curb South has not demonstrated that it suffered any prejudice as a result of Centex's delay in asserting the right to arbitrate the parties' dispute. The prejudice prong of the waiver-of-arbitration analysis has therefore not been met.

{10}    In addition to the waiver argument we have rejected above, Curb South contends the arbitration it must engage in with Centex should not have been consolidated with the arbitration proceeding between Centex, the Homeowner Plaintiffs, and possibly other parties to this litigation. [MIO 8-12] In our notice of proposed disposition we proposed to affirm the district court's consolidation of the arbitrations, relying on Section 44-7A-11. We discussed the four statutory factors that must be considered in deciding whether to consolidate separate arbitration proceedings: (1) the existence of separate arbitration proceedings involving a common

party; (2) whether the claims to be arbitrated arise from the same transaction or series of related transactions; (3) the existence of a common issue of law or fact in the separate arbitration proceedings, which gives rise to a risk of inconsistent results; and (4) whether prejudice resulting from the consolidation outweighs the prejudice that would occur if the proceedings were not consolidated. *Id.* In response, Curb South does not contest our proposal to find that the first two factors are present in this case. However, Curb South objects to the consolidation for other reasons, as discussed below.

{11}     Curb South's first argument is one we have already rejected above; Curb South contends that it cannot be compelled to arbitrate because Centex has not invoked the permissive arbitration provision. [MIO 10] As we previously discussed, however, Centex adequately invoked the provision and did not waive its contractual right to arbitration. We therefore do not accept this argument.

{12}     Curb South's next argument concerns the third statutory factor; Curb South strongly contends there is no risk of conflicting decisions because under New Mexico's comparative-fault law, Centex will only be held liable for its own actions or inactions. [MIO 10] However, given the nature of this case, it is not clear whether comparative-fault principles will control any liability Centex may incur. This is a construction-defects case [RP Vol. 1, p.3; Vol. 3, p. 582], and in such cases the builder

may or may not be held liable only for its own actions. *See, e.g.*, *In re Consol. Vista Hills Litig.*, 1995-NMSC-020, ¶¶ 9-11, 22-23, 119 N.M. 542, 893 P.2d 438. Instead, there is a distinct possibility the builder could be relegated to seeking indemnification from a third party, after it has been held liable for damages caused by that third party's conduct rather than its own. *Id.* In this case, there is at least some possibility that Centex will be held liable to the Homeowner Plaintiffs for defects that were caused by Curb South's actions, rather than those of Centex. In turn, there is a risk of conflicting decisions because in one arbitration Centex, as the builder, could be found liable to the Homeowner Plaintiffs even though the arbitrator believes Curb South was the actively-negligent party, and in a different arbitration the arbitrator could decide that Curb South was not in fact negligent. *See id.* It is preferable, therefore, for all potentially liable parties to participate in the same arbitration process. For these reasons, we do not agree with Curb South's contentions concerning the lack of a potential for conflicting results in different arbitration proceedings.

{13} Curb South also argues that the prejudice it will suffer from the consolidation of the arbitration proceedings outweighs the prejudice Centex will suffer if it must participate in separate proceedings. [MIO 11] Curb South contends that the arbitration proceeding under AAA rules and procedures conflicts with the arbitration provision it entered into with Centex in several ways, and that these differences constitute the

12

type of prejudice that should prevent consolidation of the proceedings. *See Lyndoe v. D.R. Horton, Inc.*, 2012-NMCA-103, ¶ 19, 287 P.3d 357 (pointing out that Section 44-7A-11(a)(4) contemplates the existence of conflicting provisions in separate arbitration agreements as one type of prejudice that could override the prejudice caused by non-consolidation). The conflicts Curb South relies on include, primarily, the fact that it will be compelled to participate in an AAA arbitration rather than a non-AAA arbitration; Curb South contends that AAA "is a costly organization that provides its own rules for selection of arbitrators, discovery, hearings, awards, etc." [MIO 11] Curb South argues that the arbitration process it agreed to with Centex is a streamlined process, "which is the antithesis of arbitration with the AAA." [MIO 12] Curb South also notes that its agreement with Centex provides for mediation, which if successful can avoid the need for arbitration altogether.

{14}     We address the last point first. Parties always remain free to mediate their differences and resolve their disputes, even if an arbitration proceeding is pending. The presence of a mediation provision in the agreement between Curb South and Centex, therefore, is not a reason to refrain from consolidating that arbitration with the AAA arbitration.

{15}     As to the differences between AAA arbitration and the process agreed to by Curb South and Centex, the criticisms of the AAA process leveled by Curb South are

13

far too general, lacking any specific facts or details, and Curb South does not point to any evidence in the record supporting its criticisms. These generalized arguments are not sufficient to show that the prejudice Curb South may suffer under the consolidated arbitration proceeding outweighs the potential prejudice to Centex if it is required to participate in two separate arbitration proceedings and run the risk of inconsistent rulings, and we will not reverse the district court's analysis of the relative prejudice suffered by the parties on the basis of assertions by counsel that AAA arbitration is "costly" and is the "antithesis" of streamlined arbitration. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 (noting that "mere assertions and arguments of counsel are not evidence").

{16} In the interest of providing guidance to the parties and the district court, we briefly discuss one issue that was not raised as an appellate issue in the docketing statement, but has been mentioned in that pleading as well as in pleadings filed below. Curb South's docketing statement includes an assertion that there are two separate agreements between Curb South and Centex – one involving the Sundance development, and one involving the Trailside development. According to Curb South, the Sundance agreement contains an arbitration clause but the Trailside agreement does not; this assertion seems to be confirmed by brief mentions of the Trailside agreement in the pleadings below. [RP 1918, 1923, 1982] The district court's order

14

consolidating the arbitrations does not mention the Trailside agreement. We point out that the order should not be construed as ordering Curb South to arbitrate any disputes involving the Trailside agreement; in the absence of an arbitration provision or some other form of agreement to arbitrate, the district court has no power to compel Curb South to arbitrate any dispute arising out of the Trailside agreement. *See McMillan v. Allstate Indem. Co.*, 2004-NMSC-002, ¶ 8, 135 N.M. 17, 84 P.3d 65 ("[i]f the court finds that there is no enforceable agreement, it may not ... order the parties to arbitrate."); *see also* NMSA 1978, § 44–7A–8(c) (same). We therefore interpret the district court's order as applying only to the Sundance agreement. *Cf. Herrera v. Roman Catholic Church*, 1991-NMCA-089, ¶ 14, 112 N.M. 717, 819 P.2d 264 ("Unless clearly erroneous or deficient, findings of the [district] court will be construed so as to uphold a judgment rather than to reverse it.").

{17}     Based on the foregoing and on the analysis contained in the notice of proposed summary disposition, we affirm the district court's order requiring Curb South to arbitrate its dispute with Centex and consolidating that arbitration with the AAA arbitration between Centex and the Homeowner Plaintiffs.

{18}     **IT IS SO ORDERED.**

---

**M. MONICA ZAMORA, Judge**

15

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Chief Judge**


_____

**JONATHAN B. SUTIN, Judge**