RUDOLPH V. MANOR ESTATES

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**ANITA JEAN RUDOLPH, Deceased, by the Personal Representative of the WRONGFUL DEATH ESTATE, PAUL RUDOLPH,**
**Plaintiff-Appellee,**
**v.**
**MANOR ESTATES, INC. d/b/a PRINCETON PLACE; PRINCE & LUFFEY, LLC d/b/a PARAMOUNT HEALTHCARE CONSULTANTS; DANNY PRINCE; WW HEALTHCARE, LLC; HORACE WINCHESTER; and JERRY WILLIAMSON,**
**Defendants-Appellants**
**and**
**WW HEALTHCARE, LLC; HORACE WINCHESTER; and JERRY WILLIAMSON,**
**Third-Party Plaintiffs,**
**v.**
**IRONSHORE SPECIALTY INSURANCE COMPANY, a foreign insurance company; and VAN GILDER INSURANCE CORPORATION, a foreign insurance company,**
**Third-Party Defendants,**
**and**
**IRONSHORE SPECIALITY INSURANCY COMPANY,**
**Counterclaimant and Fourth-Party Plaintiff,**
**v.**
**WW HEALTHCARE, LLC; HORACE WINCHESTER; JERRY WILLIAMSON; and MANOR ESTATES, INC.,**
**Counterdefendants and Fourth-Party Defendants.**

Docket No. A-1-CA-35862
COURT OF APPEALS OF NEW MEXICO
May 13, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Carl J. Butkus, District Judge

**COUNSEL**

Harvey and Foote Law Firm, Jennifer J. Foote, Albuquerque, NM for Appellee

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Michelle A. Hernandez, Tomas J. Garcia, Elizabeth A. Martinez, Albuquerque, NM, Quintairos, Prieto, Wood & Boyer, P.A., Frank Alvarez, Dallas, TX for Appellants.

**JUDGES**

KRISTINA BOGARDUS, Judge. WE CONCUR: JENNIFER L. ATTREP, Judge, JACQUELINE R. MEDINA, Judge

**AUTHOR:** KRISTINA BOGARDUS

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}** Defendant Princeton Place, a nursing home facility, along with Defendant owners and operators of Princeton Place (collectively Defendants) appeal the district court's order denying their motion to compel arbitration. The district court rejected Defendants' request to have the arbitrator decide the threshold issue of arbitrability and determined that the American Health Lawyers Association (AHLA) was unavailable to serve as arbitrator. The district court concluded that, because the designation of AHLA as arbitrator was integral to the agreement, the arbitration agreement was unenforceable. The district court also determined that Plaintiff's claims for injuries arising from rape were not within the scope of the parties' arbitration agreement. We affirm the district court's order denying Defendants' motion to compel arbitration. Because we conclude the arbitration agreement is unenforceable, we do not reach the issue of the arbitration agreement's scope.

**BACKGROUND**

**I. Procedural Background**

**{2}** This is the second appeal in this case. The first followed the district court's original denial of Defendants' motion to compel, which was based in part on the court's conclusion that the arbitration agreement was not binding on Plaintiff as the personal representative of the estate. While the appeal was pending, this Court decided *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, which held that a valid arbitration agreement binds the wrongful death estate and beneficiaries. 2014-NMCA-001, ¶ 1, 315 P.3d 298. As a result, we reversed the district court's denial and remanded for further consideration of the remaining issues. This appeal followed the district court's subsequent denial of Defendants' motion to compel arbitration on remand.

**II. Factual Background**

**{3}** Anita Jean Rudolph, a resident of Princeton Place nursing home, was allegedly raped and seriously injured by another resident. Ms. Rudolph died approximately one month after the alleged rape. Plaintiff is the personal representative of the wrongful death estate of Ms. Rudolph. Plaintiff alleges that the injuries Ms. Rudolph suffered arising from rape were a cause of her death.

**{4}** When Ms. Rudolph was admitted to Princeton Place, her son signed a resident admission agreement on her behalf. The resident admission agreement makes two references to binding arbitration. The first, entitled "Resolution of Disputes," is in Section 31 of the agreement. In relevant part it reads, "Any legal dispute, controversy, demand or claim . . . that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration[.]" Section 31 also states that binding arbitration shall be conducted "in accordance with the [AHLA] Alternative Dispute Resolution Services Rules of Procedure for Arbitration which are hereby incorporated into this agreement."

**{5}** The resident admission agreement's second reference to arbitration is in a two-page section entitled "Mutual Agreement to Arbitrate Claims." The first paragraph of that section states:

> It is understood and agreed . . . that any legal dispute, controversy, demand or claim . . . that arises out of or relates to the Resident Admission Agreement or any service or health care provided by the Facility to the Resident, shall be resolved exclusively by binding arbitration to be conducted at a place agreed upon by the parties, . . . in accordance with the [AHLA] Alternative Dispute Resolution Services Rules of Procedure for Arbitration which are hereby incorporated into this agreement[.]

Sometime after Ms. Rudolph's death, Plaintiff filed a complaint for wrongful death, as well as various other claims, in the Second Judicial District Court.

## DISCUSSION

### I. Standard of Review

**{6}** "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. "Similarly, whether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." *Id.* (internal quotation marks and citation omitted).

### II. The Issue of Arbitrability Was Properly Decided by the District Court

**{7}** Before turning to the issue of arbitrability in this instance, we first address Plaintiff's contention that this issue was not properly preserved by Defendants. "To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 (internal quotation marks and citation omitted). During a post-remand status conference, the parties to this case were instructed to submit briefs on the remaining issues pertaining to Defendants'

motion to compel arbitration. At the hearing conducted after the briefs were submitted, Defendants asked the district court to delay any ruling on the scope of the arbitration agreement and related issues until AHLA had a chance to determine whether the arbitration contract complied with the AHLA rules, which had been revised sometime after the arbitration contract at issue was signed. Plaintiff did not object to Defendants' request at the hearing.

**{8}**     Defendants contend that their statements were sufficient to put the court on notice of their arguments, and they note that Plaintiff did not object when Defendants made their request. Plaintiff concedes that Defendants asked the court to let AHLA decide the question of whether the arbitration contract complied with the AHLA rules, but argues, without citing authority, that merely raising the issue at the hearing was not enough to preserve the issue. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We determine that raising the issue at the hearing and specifically asking the court to delay its rulings until AHLA had an opportunity to review the arbitration agreement for compliance with AHLA requirements was sufficient in this instance to put the court on notice of the issue and to preserve this issue for appeal. *Cf. City of Albuquerque v. Sanchez*, 1992-NMCA-038, ¶ 10, 113 N.M. 721, 832 P.2d 412 (noting that issue preserved for appellate review when trial judge was alerted to claimed error and had an opportunity to correct the error). Therefore, we next consider the question of who, under the terms of the arbitration agreement, decides the question of arbitrability: the court or the arbitrator?

**{9}**     Defendants contend that the district court erred by deciding that the question of arbitrability was for the court, not the arbitrator, to decide. Defendants note that the specific agreement signed by Plaintiff required arbitration "in accordance with AHLA Rules," and argue that the rules contain a specific delegation provision.[1] That provision, found in AHLA Rule 11.6, states that "[if] a [c]onsumer claims the agreement to arbitrate fails to comply with the requirements listed in Rule 11.5, the arbitrator will promptly schedule a preliminary hearing on this issue." Thus, Defendants argue, because the parties to this agreement incorporated the AHLA rules, which they contend include a specific delegation of the gateway issue of arbitrability to the arbitrator, there is clear and unmistakable evidence that the parties delegated the issue of arbitrability.

**{10}**     Plaintiff argues that the district court properly decided the threshold issue of arbitrability because there was not clear and unmistakable evidence that the parties delegated the issue. Plaintiff points out that the arbitration agreement itself does not contain a delegation clause; thus, Plaintiff argues there is no evidence to support a finding of delegation. Next, Plaintiff contends that the delegation provision on which

---

1 Because AHLA provides that a claim will be arbitrated in accordance with the version of the rules posted on its website on the date a demand for arbitration is received and no such demand had been made, the district court noted that determining which rules to apply presented a "moving target." Ultimately, the district court decided to apply the 2014 rules and specifically analyzed whether the arbitration agreement satisfied Rule 11.5. We note that AHLA has amended its rules twice since issuing the 2014 rules. However, we restrict our analysis to the 2014 rules based on the district court's ruling and the arguments made by the parties on appeal.

Defendants rely is not a true delegation provision because it does not grant the arbitrator sole authority to determine the validity of the clause. Rather, Plaintiff contends this provision is simply a description of a procedural method by which AHLA determines whether the arbitration agreement complies with its terms. In sum, Plaintiff argues, there is no clear, unmistakable evidence that the parties intended to delegate arbitrability to an arbitrator.

**{11}** Arbitration is a "highly favored" form of dispute resolution because it promotes judicial efficiency and conservation of the parties' resources. *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 51, 131 N.M. 772, 42 P.3d 1221. There is a "strong public policy in this state . . . in favor of resolution of disputes through arbitration." *Lisanti v. Alamo Title Ins. of Tex.*, 2002-NMSC-032, ¶ 17, 132 N.M. 750, 55 P.3d 962 (internal quotation marks and citation omitted). "When a party agrees to a non-judicial forum for dispute resolution, the party should be held to that agreement." *Id.*

**{12}** We look to the arbitration agreement to determine if arbitrability should have been within the arbitrator's purview in the first instance. Our Court has previously held that "[t]he general rule is that the arbitrability of a particular dispute is a threshold issue to be decided by the district court unless there is *clear and unmistakable evidence* that the parties decided otherwise under the terms of their arbitration agreement." *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 123 (emphasis added). Threshold issues of arbitration "typically involve matters of a kind that contracting parties would likely have expected a court to decide," including an arbitration provision's validity, scope, or applicability to a particular controversy. *Id.* (alteration, internal quotation marks, and citation omitted). However, consistent with the principles of contract law, parties can agree to have threshold issues decided by an arbitrator in addition to the underlying claims. *Id.* ¶ 18. This agreement to delegate the issues creates an exception to the general rule that issues of arbitrability are for courts to decide. *Id.* The delegation provision must be supported by clear, unmistakable evidence that the parties delegated arbitrability to the arbitrator. *Id.* Clear and unmistakable evidence exists when the arbitration agreement contains specific language delegating all disputes arising out of the agreement to the arbitrator or when an arbitration agreement specifically incorporates an arbitral forum's rules that contain such a delegation. *Id.* ¶¶ 23-24. In order to determine whether there is clear, unmistakable evidence of the intent to delegate in this case, we examine the factors considered by the *Felts* Court and contrast those factors with the arbitration agreement at issue here.

**{13}** The *Felts* Court began by looking at the plain language of the arbitration agreement. *Id.* ¶ 23. The Court noted that the title of the agreement and the first sentence of the agreement "unambiguously provide that all disputes were to be submitted to an arbitrator." *Id.* The agreement was entitled "Agreement to Arbitrate *All Disputes*," and the first sentence of the agreement was equally broad: "stating that the parties submit to arbitration '*any and all claims disputes, or controversies* . . . aris[ing] out of . . . this Agreement to Arbitrate All Disputes . . . *including disputes as to the matters subject to arbitration*.' " *Id.* This language, including the italicized clause, was

determined to be the requisite "clear and unmistakable evidence" that "the parties agreed to arbitrate all issues, including issues of arbitrability." *Id.*

**{14}** Here, in contrast, the two arbitration agreement clauses at issue in the parties' arbitration agreement are entitled "Resolution of Disputes," and "Mutual Agreement to Arbitrate Claims." These titles do not contain the same broad language relied on in *Felts*, which evidenced the parties' intent to arbitrate *all* matters. More importantly, the arbitration agreement clauses in this case lack the specific language that was persuasive in *Felts*, that all disputes "including disputes as to the matters subject to arbitration" be decided by an arbitrator. Without such broad language, we cannot conclude that there is clear and unmistakable evidence that the parties agreed to let an arbitrator decide all issues, including arbitrability.

**{15}** The *Felts* Court also relied on the fact that the arbitration agreement referred to and incorporated the Code of Procedure of the National Arbitration Forum (NAF Code of Procedure) into the arbitration agreement. *Id.* ¶ 24. The Court noted that the NAF Code of Procedure Rule 20 "expressly provides that an arbitrator has the authority to decide jurisdiction issues, including arbitrability questions regarding the existence, validity, and scope of an arbitration provision" and concluded that the incorporation of the NAF Code of Procedure "constitute[d] clear and unmistakable evidence of the parties' intent to delegate arbitrability issues." *Id.* ¶¶ 21, 24.

**{16}** Although the arbitration agreement signed by the parties in this case specifically incorporated the AHLA rules by reference, the provision Defendants rely upon—Rule 11.6—does not delegate arbitrability to an arbitrator. AHLA Rule 11.6 authorizes an arbitrator to conduct a preliminary hearing "[i]f a [c]onsumer claims the agreement to arbitrate fails to comply with the requirements listed in Rule 11.5[.]" Rule 11.5 lists specific language requirements that must be found in an arbitration agreement in order for AHLA to administer the consumer's dispute. The arbitrator has authority under Rule 11.6 only to determine whether a particular arbitration agreement complies with Rule 11.5. If the arbitrator determines that the arbitration agreement does not, the arbitrator will terminate the arbitration. Rule 11.6 specifically limits the arbitrator's authority by stating that "[a]ny determination under [Rule 11.6] not to administer the arbitration *shall not* be considered a determination on the validity of the arbitration agreement[.]" (Emphasis added.) Thus, the AHLA rules Defendants reference do not expressly confer power on the arbitrator to decide arbitrability questions regarding the existence, validity, and scope of an arbitration provision. The arbitrator's authority is limited to determining, as an initial matter, whether the arbitration agreement complies with the AHLA rules. If it does not, the AHLA arbitrator does not continue. The scope of the AHLA arbitrator's review under Rule 11.6 is far more limited than the broad delegation of authority found in Rule 20 of the NAF Code of Procedure referenced in *Felts*, and does not include power to determine the validity of the arbitration agreement. Given the foregoing, we find no clear and unmistakable evidence that the parties agreed to delegate issues of arbitrability to the arbitrator based on the incorporation of AHLA Rule 11.6, nor do we find such evidence in the plain language of the arbitration agreement. We therefore affirm the district court's decision to decide the issues of arbitrability.

**III.    The Arbitration Agreement Is Unenforceable Because AHLA Is Not Available**

**{17}**    The district court determined that the arbitration agreement did not satisfy the AHLA requirements found in Rule 11.5. The district court, relying on *Rivera v. American General Financial Services, Inc.*, 2011-NMSC-033, 150 N.M. 398, 259 P.3d 803, then concluded that the designation of AHLA was material and integral to the arbitration agreement. Because of this, the district court determined that appointment of a replacement arbitrator was not appropriate. Based on the foregoing, the district court concluded that the arbitration agreement was unenforceable. We agree.

**A.    The Arbitration Agreement Does Not Satisfy AHLA Rule 11.5**

**{18}**    Defendants concede that the arbitration agreement does not use the exact language and formatting required by Rule 11.5, but argue that the language used is substantially similar and satisfies all subsections of the rule. Plaintiff takes the opposite position—that the arbitration agreement cannot be enforced because the arbitration agreement does not comply with any of the subsections of Rule 11.5. Neither party argues that Section 31 of the resident admission agreement, titled "Resolution of Disputes," meets the standards set forth in Rule 11.5. Therefore, we limit our analysis to the portion of the resident admission agreement entitled "Mutual Agreement to Arbitrate Claims" and conclude that the arbitration agreement does not satisfy Rule 11.5. We explain.

**{19}**    Rule 11.5 sets out specific requirements for arbitration agreements that are "signed before the events giving rise to the claim occurred[.]" The arbitration agreement at issue in this case was signed before Ms. Rudolph suffered injury; therefore, this arbitration agreement must comply with Rule 11.5's explicit requirements, which are that the agreement:

   (a)    be a separate document conspicuously identified as an agreement to arbitrate;
   (b)    include the following notice, or substantially similar language, in a conspicuous location:

**Voluntary Agreement to Arbitrate**
**THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS, PLEASE READ IT CAREFULLY BEFORE SIGNING.**

**This is a voluntary agreement to resolve any dispute that may arise in the future between the parties under the American Health Lawyers Association's Rules of Procedure for Arbitration. In arbitration, a neutral third party chosen by the parties issues a final, binding decision. When the parties agree to arbitrate, they waive their right to a trial by jury and the possibility of an appeal.**

(c)    state conspicuously that the health care entity will provide the same care or treatment without delay, if the agreement is not signed; and

(d)    state conspicuously that the agreement to arbitrate may be revoked within 10 days after being signed (unless a state law applicable to contracts generally grants a longer period for revocation).

**{20}**    We note that these requirements apply to consumer cases only; consequently, these requirements seem aimed at providing specific notice and information to consumers who may be unfamiliar with the concept of arbitration. Rule 11.5's requirements draw a person's attention to certain key points: the voluntary nature of the agreement, the consequences of signing the agreement, and that the refusal to sign the agreement or the revocation of the agreement will not affect the resident's care or treatment. Additionally, Rule 11.5 specifies that its requirements *must* be followed, indicating that it is mandatory that an arbitration agreement comply with Rule 11.5's form and language requirements. *See, e.g.*, NMSA 1978, Section 12-2A-4(A) (1997) (defining "must" as a term that expresses "a duty, obligation, requirement or condition precedent").

**{21}**    Rule 11.5(a) requires that an arbitration agreement be a separate document from the resident admission agreement, but does not define what constitutes a "separate" document. When a contractual term is undefined, the term must be construed in its usual and ordinary sense, unless the contract states otherwise. *Wesco Ins. Co. v. Velasquez*, 1975-NMSC-047, ¶ 12, 88 N.M. 273, 540 P.2d 203. Our courts often look to dictionary definitions to assess the usual and ordinary meaning of words. *See, e.g.*, *United Nuclear Corp. v. Allstate Ins. Co.*, 2012-NMSC-032, ¶¶ 19-21, 285 P.3d 644 (citing a number of cases indicating that courts routinely refer to dictionaries to aid in assessing the meaning of undefined terms and considering the dictionary definition of "sudden" to construe an insurance contract's exclusion clause).

**{22}**    "Separate" as used in Rule 11.5(a) is commonly defined as "set or kept apart," "not shared with another," "existing by itself," and "dissimilar in nature or identity." *Merriam-Webster's Collegiate Dictionary* 1134 (11th ed. 2005). It is undisputed that the arbitration agreement is located within, and not outside of, the thirty-page resident admission agreement. The two-page arbitration agreement is not dissimilar in nature or identity; it contains the same header found on each page of the resident admission agreement and is numbered consecutively with all of the other pages of the resident admission agreement. These elements are not characteristic of a separate document; instead, these features indicate that the arbitration agreement is but one of many subsections found within the resident admission agreement.

**{23}**    Defendants contend that the arbitration agreement's signature requirement is sufficient to set it off from the rest of the resident admission agreement. Defendants do not cite any authority indicating that a signature is sufficient to set an arbitration agreement apart from the document within which it is found. *See Curry*, 2014-NMCA-031, ¶ 28. We note that, in contrast to Defendants' contention, this particular resident admission agreement requires at least six separate signatures within the document,

including signatures for admission, consent for patient monitoring, thirty-day notice of discharge, arbitration, patient-code status, and permission for patient restraint. The arbitration agreement's signature requirement, one of many signatures required by the resident admission agreement, is inadequate to set off the arbitration agreement so that it can be viewed as a separate document as required by Rule 11.5(a).

**{24}** Defendants further argue that the arbitration agreement satisfied all other subsections of Rule 11.5. However, despite Defendants' arguments to the contrary, we note that, contrary to Rule 11.5(b)'s requirements, there is no language in the arbitration agreement that advises the consumer that he or she is giving up *any* form of an appeal, that the document should be read carefully, or that the arbitrator is a "neutral third party chosen by the parties." Additionally, our review of the arbitration agreement revealed that all of the terms that are to be stated conspicuously under Rule 11.5(b), (c), and (d) are only printed in plain text, with the exception of the waiver of the right to have the claim decided before a judge or jury. The admission agreement simply does not comply with Rule 11.5's mandatory form and language requirements. Based on the foregoing analysis, which is guided and informed by Rule 11.5's purpose to draw a consumer's attention to the arbitration agreement's distinct features that affect legal rights, we conclude that the arbitration agreement does not meet Rule 11.5's requirements, rendering AHLA unavailable to arbitrate the parties' dispute.

## B.     AHLA's Designation Was Integral to the Arbitration Agreement

**{25}** We now turn to the final issue to consider in this matter—whether AHLA was integral to the arbitration agreement. We are guided in our analysis by the Supreme Court's opinion in *Rivera*, 2011-NMSC-033, which concerned an arbitration agreement that identified an arbitration administrator that was unavailable. *Id.* ¶ 21. Despite the administrator's unavailability, the defendant argued that the district court should have selected a substitute arbitrator under Section 5 of the Federal Arbitration Act (FAA), 9 U.S.C. Sections 1-16 (2006). *Rivera*, 2011-NMSC-033, ¶ 21. Section 5 of the FAA provides:

> [i]f in the agreement provision be made for a method or naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire[.]

*Id.* ¶ 22 (quoting 9 U.S.C. § 5). The plaintiff argued that Section 5 did not apply when the sole designated arbitrator was not available. *Id.* ¶ 23.

**{26}** The Court disagreed with the plaintiff's contention that Section 5 would never apply when the designated arbitrator is unavailable. *Id.* ¶¶ 26-27. Instead, the Court

focused on whether the designation of the arbitration provider was integral to the agreement to arbitrate, *id.*, and noted this issue was a matter of contract interpretation. *Id.* ¶ 27. "The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *Id.* (internal quotation marks and citation omitted). If the plain language of the arbitration agreement establishes the parties' intent that disputes arising from the agreement be resolved "solely through a specific arbitration provider, the parties' intent would be frustrated if a court appointed a different arbitration provider." *Id.* The Court adopted an integral versus ancillary test for resolving the issue by examining whether the designation of the arbitration provider was integral to the agreement to arbitrate. *Id.* ¶¶ 26-27.

**{27}** In order to determine whether the designation was integral, the Court considered, among other questions, whether there is an express designation of a single arbitration provider, whether the parties have designated the rules of a specific arbitration provider, and whether the arbitration agreement used mandatory contractual language for terms tied to the arbitration provider. *Id.* ¶¶ 28-31. Reasoning that the arbitration contract specifically and exclusively named the unavailable arbitration provider, mandated that the arbitration be conducted under the unavailable provider's rules and procedures, and used mandatory rather than permissive language, our Supreme Court concluded that the selection of the unavailable arbitration provider was integral to the arbitration agreement and that Section 5 did not allow for a substitute arbitrator to be selected and imposed on the parties. *Id.* ¶¶ 32-34, 38.

**{28}** Analyzing the arbitration agreement here, we note that it does not expressly designate AHLA as the arbitrator; rather, the arbitration agreement provides that the arbitration be "in accordance with" the AHLA's rules. The arbitration agreement specifically and exclusively references AHLA throughout the arbitration agreement and incorporates the AHLA's rules into the same. Among other things, the incorporated AHLA rules dictate: (1) how to file a claim for arbitration; (2) that AHLA controls the selection and appointment of a single, neutral arbitrator; (3) that an alternative selection process is only available when the parties have agreed to the alternative in writing and the validity and interpretation of that agreement are not in dispute; and (4) the powers available to the arbitrator. Furthermore, the language concerning arbitration is mandatory rather than permissive. For example, the arbitration agreement indicates that claims "shall be resolved exclusively by binding arbitration" and that all claims "shall be arbitrated in one proceeding."

**{29}** Given the specific and exclusive references to the AHLA, incorporation of the AHLA rules, the breadth of the AHLA rules, and mandatory language of the agreement, we conclude that the selection of the AHLA was integral to the arbitration agreement. Therefore, we agree with the district court that Section 5 of the FAA does not allow the appointment of a substitute arbitrator in this case and affirm the district court's denial of Defendants' motion to compel arbitration.

**{30}** Based on the foregoing, we need not reach Defendants' final claim that the arbitration agreement's scope included Plaintiff's claims of personal injuries arising from Ms. Rudolph's alleged rape.

**CONCLUSION**

**{31}** We affirm the district court's order denying Defendants' motion to compel arbitration and remand for further proceedings.

**{32} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**